E-filing

PAUL, HASTINGS, JANOFSKY & WALKER LLP
STEPHEN P. SONNENBERG (NY SB# 4431540)
75 East 55th Street
New York, NY 10022-3205
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

PAUL, HASTINGS, JANOFSKY & WALKER LLP
MARIA A. AUDERO (SB# 210141)
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendants
BANK OF AMERICA, N.A., BANC OF AMERICA
INVESTMENTS SERVICES, INC., and BANK OF
AMERICA CORPORATION

FILED

MAR 2 3 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADR

| | |
|---|---|
| ALBERT LOPEZ, as an individual and RENE POMPA, as an individual, both on behalf of others, similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, N.A., AND Does 1 through 100, inclusive,<br><br>Defendant. | NO. C10-01207 JL<br><br>**DECLARATION OF COLLEEN O. JOHNSON IN SUPPORT OF BANK OF AMERICA CORPORATION'S NOTICE OF REMOVAL**<br><br>Alameda Superior Court,<br>No. HG07363650<br><br>**Class Action** |

LEGAL_US_E # 87314755.1

DECLARATION OF COLLEEN O. JOHNSON IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

I, Colleen O. Johnson, declare as follows:

1. I am Vice President and Assistant Corporate Secretary for Bank of America Corporation (the "Corporation"), a Defendant in the matter entitled "*Albert Lopez, as an individual and Rene Pompa, as an individual, both on behalf of others similarly situated, Plaintiff, v. Bank of America, N.A., a national association, and Does 1 through 100, inclusive, Defendants,*" a wage-and-hour class action filed in the Superior Court of the State of California, County of Alameda, Case No. HG07363650. I am making this declaration in support of the Corporation's Notice of Removal. I have personal knowledge of the facts set forth in this declaration, and if called to testify under oath, could and would testify competently thereto. I am over 18 years of age.

2. I make this declaration based on my personal knowledge and based upon information obtained from records made by the Corporation as a memorandum of records of acts, transactions, occurrences or events set forth in the Corporation's records, which the Corporation records in the regular course of business and which it is and has been the regular course of the Corporation's business to record at the time of each such act, transaction, occurrence or event, or within a reasonable time thereafter.

3. Bank of America Corporation is incorporated in the State of Delaware.

4. The Corporation's headquarters are located in Charlotte, North Carolina. The Corporation's officers direct, control, and coordinate the Corporation's activities out of its Charlotte headquarters. Further, the majority of the Corporation's executive and administrative functions are performed in its Charlotte headquarters.

5. Bank of America, National Association (the "Bank") is a national banking association chartered under the laws of the United States (Office of Comptroller of the Currency ("OCC") No. 13044). Its articles of association designate North Carolina as the State wherein its main office is located. The Bank's principal executive offices are located in Charlotte, North Carolina. In addition, its certificate from the OCC states that it is located in Charlotte, North Carolina.

6. The OCC is the federal agency charged with the regulation and supervision of national banks. On October 23, 2002, the OCC issued an Interpretive Letter regarding the citizenship of Bank of America, N.A. for purposes of diversity of citizenship jurisdiction. A true and correct copy of this Interpretive Letter (#952) is attached hereto as Exhibit "A".

7. On October 23, 2009, Banc of America Investment Services, Inc. ("BAI") merged into Merrill Lynch, Pierce, Fenner & Smith Incorporated, a corporation that is organized and existing under the laws of the State of Delaware and is owned by Merrill Lynch & Co., Inc., which in turn is a wholly owned subsidiary of the Corporation.

8. During the relevant times herein, BAI was incorporated in the State of Florida.

9. During the relevant times herein, BAI's headquarters were located in Boston, Massachusetts; BAI's officers directed, controlled, and coordinated its activities out of its Boston headquarters; and the majority of BAI's executive and administrative functions were performed in its Boston headquarters.

10. The Bank has identified approximately 52,865 unique class members for the putative class alleged in this matter. This headcount is for the period commencing December 31, 2003 for the rest break class of Personal Bankers only, and December 31, 2006 for the wage statement class, through February 5, 2010, the last date on which the Bank performed a data pull for this information from its Human Resources Information System.. Of these approximately 52,865:

    a. approximately 51,909, or 98.2% of the putative class, are or were employed by the Bank;

    b. approximately 124, or 0.2% of the putative class, are or were employed by the Corporation; and

    c. approximately 832, or 1.6% of the putative class, are or were employed by BAI.

///
///
///

11. Upon information and belief, all or substantially all of these putative class members are or were citizens of California during the relevant period because they were employed by the three-above entities in California.

I declare under penalty of perjury, pursuant to the laws of the United States of America and the State of California, that the foregoing is true and correct.

Executed this 19th day of March 2010, in Charlotte, North Carolina.

Colleen O. Johnson

-3-

LEGAL_US_E # 87314755.1

DECLARATION OF COLLEEN O. JOHNSON IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

Source: Legal > Area of Law - By Topic > Banking > Administrative Materials & Regulations > Agency Decisions > **Office Comptroller Currency Interpretative Letters (Pub & Unpub)**
Terms: **october 23, 2002** (Edit Search | Suggest Terms for My Search)

✔Select for FOCUS™ or Delivery

DEPARTMENT OF THE TREASURY
OFFICE OF THE COMPTROLLER OF THE CURRENCY

OCC UNPUBLISHED INTERPRETIVE LETTER

**REFERENCE:** 12 USC 21 - 23
12 USC 30B

Comptroller of the Currency
Administrator of National Banks

Washington, D.C. 20219

Mr. Scott A. Cammarn, Esq
Associate General Counsel
Bank of America, National Association
101 South Tryon Street
Charlotte, North Carolina 28255

Interpretive Letter # 952
February 2003

**October 23, 2002**

**CORE TERMS:** main office, national bank, organization certificate, merger, designated, diversity jurisdiction, national banking, home state, new state, discount, deposit, banking, village, principal place of business, corporate status, incorporation, Interstate, organizers, insured, place designated, designation, business of banking, reference point, capital stock, federal law, state bank, jurisdictional, inconsistency, organizing, designate

**LENGTH:** 3520 words

**TEXT:** Dear Mr. Cammarn:

This is in response to your letter of October 4, 2002, on behalf of Bank of America, National Association, Charlotte, North Carolina, ("Bank of America" or "the Bank") requesting the views of the Office of the Comptroller of the Currency (the "OCC") concerning the location of the Bank for corporate status purposes in the national banking laws and in determining the Bank's citizenship for federal diversity jurisdiction under 28 U.S.C. §§ 1332 & 1348. As explained below, we believe the corporate location of the Bank is determined by the place where the Bank's main office is currently located (Charlotte, North Carolina), not the place where it was located in the Bank's historical organization certificate (San Francisco, California).

**Background**

Bank of America, N.A., is the result of an interstate merger that occurred in 1999. In that merger, NationsBank, N.A., Charlotte, North Carolina, (Charter Number 14448) was merged into the Bank of America National Trust & Savings Association, San Francisco, California, (Charter Number 13044). Charter Number 13044 survived the merger. The historical organization certificate for Charter Number 13044, executed by the organizing directors of the Bank of Italy National Trust and Savings Association on February 26, 1927, stated that its original place of business was San Francisco, California. In the 1999 merger, however, the resulting bank retained the main office of NationsBank in Charlotte as its main office, as it was authorized to do under 12 U.S.C. § 1831u(d)(1). n1 Hence,

the main office of Charter Number 13044 today is in Charlotte. The resulting bank also changed its name to Bank of America, N.A.

n1 *See Decision to Merge Bank of America National Trust & Savings Association, San Francisco, California, and NationsBank, N.A., Charlotte, North Carolina* (OCC CRA Decision No. 94, May 20, 1999).

### Corporate Location of a National Bank under the National Bank Act

The location of a national bank for corporate status purposes under the National Bank Act and other banking laws is determined by the place where the national bank's main office is located. As explained below, at the time of chartering, the main office is located in the place designated in the bank's organization certificate and original articles of association. Subsequently, if the bank changes the location of its main office to a new place, then the new location determines the location of the bank for corporate status purposes. Such changes of location are evidenced in the bank's articles of association, since the articles must be amended to reflect the change of the main office to a new place.

When organizers propose to form a national bank, they apply to the OCC. Among the materials and information they must submit are an organization certificate and articles of association. 12 U.S.C. §§ 21-23. The articles of association and the organization certificate are typically prepared at the same time at the first meeting of the organizers and sent to the OCC together. *See Comptroller's Corporate Manual, Corporate Organization* at 19-20 (April 1998) (sample minutes for first meeting of organizers). Both the organization certificate and the articles contain the name of the proposed bank, its location, and the amount and structure of its capital stock. n2 In particular, both documents will include "the place where its operations of discount and deposit are to be carried on, designating the State, Territory, or District, and the particular county and city, town, or village." 12 U.S.C. § 22(Second).

n2 12 U.S.C. § 22 (organization certificate); *Comptroller's Corporate Manual, Corporate Organization* at 33-35 (April 1998) (instructions for organization certificate and sample document); *Comptroller's Corporate Manual, Corporate Organization* at 21-32 (April 1998) (instructions for articles of association and sample document).

The national bank's "main office" (a term used in 12 U.S.C. § 30(b) and other banking statutes) is located within the "city, town, or village" designated as the "place where its operations of discount and deposit are to be carried on." Indeed, for location purposes, the "main office" and the "place where its operations of discount and deposit are to be carried on" are the same. Section 30(b) now uses the term "main office." But when originally enacted in 1886, the provisions now codified in 12 U.S.C. § 30(b) used the same terminology as section 22:

> SEC. 2. That any national banking association may change its name or the place where its operations of discount and deposit are to be carried on, to any other place within the same State, not more than thirty miles distant with the approval of the Comptroller of the Currency, by the vote of shareholders owning two-thirds of the stock of such association.

Act of May 1, 1886, ch. 73, § 2, 24 Stat. 18 (1886). When the statute was amended in 1959, the provision limiting moves to places within the same state was removed, and the new term "main office," was introduced. Pub. L. No. 86-230, § 3, 73 Stat. 457 (1959). n3

n3 *See generally Decision on the Applications of Bank Midwest of Kansas, N.A., Lenexa, Kansas, and Bank Midwest, N.A., Kansas City, Missouri* (OCC Corporate Decision No. 95-05, February 16, 1995) (pages 12-18), *reprinted in* Fed. Banking L. Rep. (CCH) P90,474 (discussion of sections 22, 30, and 81).

Another relevant provision is 12 U.S.C. § 81. Under section 81, the "general business of each national banking association shall be transacted in the place specified in its organization certificate and in the branch or branches, if any, established or maintained by it" under 12 U.S.C. § 36. When section 30 was added allowing changes in location and then amended to refer to the main office, an apparent inconsistency with section 81 was created, inasmuch as section 30 allowed the bank to move to a new place and even to cease operations in the old place, but section 81 continued to refer only to the place specified in the organization certificate. The OCC addressed the inconsistency by concluding that the "place specified in its organization certificate" in section 81 "is meant to include not only the place originally specified in the organization certificate but also subsequent changes of location as authorized under section 30." *OCC Bank Midwest Decision* at page 13, note 5. Thus, for location purposes, the terms are interchangeable. The main office defines the place, because the place is the city or town (and state) within which the main office is located.

While many national banks continue to operate at the place originally designated, a national bank can change its place of operations under other statutory authority. Under 12 U.S.C. § 30(b), a national bank may change the location of its main office to another location within the original city or to another location outside the original city, but within 30 miles of the city limits of the original city. Once the bank moves its main office outside its original city, the bank is now located at the new place, and the old place is no longer the place where its banking operations are carried on, in the section 22 sense, even if it retains branches in that city. n4 Moreover, a national bank can change the location of its main office into a new state. n5 It can do so without retaining any branches or other operations in its original state.

n4 In the organization certificate and original articles, even if a bank proposes to have branches in several cities upon opening, only one place is the place designated in section 22 and the articles. The articles will also refer to conducting business at authorized branches. In this regard, it is important to note that the main office is primarily a term of legal, rather than business, significance. It is the office designated as such. The bank must carry on the business of banking at its main office, but the main office need not be the office at which the bank conducts the principal portion, or any required minimum portion, of its business. *See OCC Bank Midwest Decision* at page 12. *See also Ramapo Bank v. Camp*, 425 F.2d 333, 341-42 (3d Cir. 1970).

n5 *See, e.g., Synovus Financial Corporation v. Board of Governors of the Federal Reserve System*, 952 F.2d 426 (D.C. Cir. 1991) (moving main office into new state under section 30, keeping no branches in old state); *McEnteer v. Clarke*, 644 F.Supp. 290 (E.D. Pa. 1986) (same). *See also OCC Bank Midwest Decision, supra* (moving main office into new state, and keeping branches in old state).

A national bank may also change the location of its main office in the context of an interstate merger with another bank under the Riegle-Neal Act. Under 12 U.S.C. § 215a-1 and 1831u(a), an insured national bank may merge with another insured bank with a different home state. When such a merger occurs, the resulting bank may retain, as its main office, any office that any bank involved in the merger was operating as a main office or a branch immediately before the merger. 12 U.S.C. § 1831u(d)(1). In other words, the resulting bank may designate as its main office, any one of main offices or branches of any of the banks in the merger, including a main office or branch in a state other than the state in which the acquiring bank's former main office was located. Bank of America, N.A., is the result of such an interstate merger.

If a national bank's main office is changed to a different place (a different city, town, or village), that change must be reflected in the articles of association. n6 But there is no statutory provision or regulatory procedure to change the organization certificate to reflect current conditions. It is a fixed historical document that was used in the organizing process but is not used subsequent to the issuance of the charter by the OCC and, therefore, has no reason to reflect the current status of the institution. n7

n6 See 12 U.S.C. § 21a (authorizing amendments to articles of association); 12 C.F.R. § 5.40(d)(2)(ii) (amendment of articles if main office location is changed outside original city, town, or village). Similarly, when other items that were included in the organization certificate and original articles are changed, the articles of association must be amended to reflect the changes. See 12 C.F.R. § 5.42(d)(2) (amendment of articles for change of name); 12 C.F.R. § 5.46(g)(2) & 5.46(i)(3)(iv) (amendments of articles for changes in capital stock).

n7 Compare *Comptroller's Corporate Manual, Corporate Organization* at 21 (instructions for articles include directions regarding amendment) with *Comptroller's Corporate Manual, CorporateOrganization* at 33 (instructions for organization certificate cover only original filing). See also *Decision on the Applications of American Security Bank, N.A., Washington, D.C., and Maryland National Bank, Baltimore, Maryland* (OCC Corporate Decision No. 94-05, February 4, 1994) (at page 11, note 4), reprinted in Fed. Banking L. Rep. (CCH) P89,695. In addition, the Certificate of Corporate Existence the OCC issues to a national bank, when requested, to certify it is a national bank formed under the laws of the United States and authorized to transact the business of banking on the date of the Certificate lists the location of the bank at the main office on the date of the Certificate, not the original location in the organization certificate. The Certificates the OCC has issued to Bank of America (Charter Number 13044) since the 1999 merger show Charlotte, North Carolina, as the Bank's location.

When a national bank has changed the location of its main office to a new place, it is the new place that determines the bank's location for corporate purposes. Moreover, the location of a national bank, and in particular the location of its main office, is a factor in determining the applicability of many banking statutes. Some of the statutes use the location as a reference point for a substantive provision of federal law. Others use the location to determine which state's law is made applicable to the national bank by federal law. In all these determinations, the place used is the location of the current main office as shown in the bank's current articles of association, not the place designated in the organization certificate and the original articles. n8 For example, in the OCC's recently adopted regulation addressing electronic activities, the rule specifies the manner to determine the location, for purposes of 12 U.S.C. § 85, of a national bank that operates exclusively through the Internet. It provides that the main office of such a bank is "the office identified by the bank under 12 U.S.C. 22 (Second) or as relocated under 12 U.S.C. 30 or other appropriate authority." See 67 Fed. Reg. 34992, 35006 (May 17, 2002) (to be codified at 12 C.F.R. § 7.5009).

n8 For some statutes, a national bank may also be "located" in states in which it has branches. That is a separate matter from the issue here whether the current main office or the original place is the place used when referring to a bank's location.

Finally, when Congress had occasion to identify a national bank's home state, it used the location of the bank's main office as the reference point. In the Riegle-Neal Act, Congress authorized mergers between insured banks with different home states. The "home state" of a national bank is the state in which its main office is located. 12 U.S.C. § 1831u(g)(4)(A)(i). Moreover, the home state of a state bank is the state by which the bank is chartered. 12 U.S.C. § 1831u(g)(4)(A)(ii). This suggests Congress viewed the main office of a national bank as a way to designate a state that was comparable to the state of incorporation for a state bank.

**Location of a National Bank for Federal Court Jurisdiction**

For purposes of diversity jurisdiction in federal courts, "all national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348.

Over the years, the courts have taken three positions regarding the location of a national bank for diversity purposes. Recently, some district courts adopted the position that a national bank was located in, and hence a citizen of, every state in which it maintains a branch or otherwise has a substantial presence. n9 On the other hand, an older court of appeals decision and some district courts took the position that a national bank was located for this purpose only in the state of its principal place of business. n10

n9 The first case to adopt that position was *Connecticut National Bank v. Iacono*, 785 F.Supp. 30 (D.R.I. 1992). Others have followed it. See, e.g., *Ferraiolo Construction, Inc. v. KeyBank, N.A.*, 978 F.Supp. 23 (D. Me. 1997); *Norwest Bank Minnesota, N.A. v. Patton*, 924 F.Supp. 114 (D. Colo. 1996); *Bank of New York v. Bank of America*, 861 F.Supp. 225 (S.D.N.Y. 1994).

n10 *American Surety Company v. Bank of California, N.A.*, 133 F.2d 160 (9th Cir. 1943); *Baker v. First American National Bank*, 111 F.Supp.2d 799 (W.D. La. 2000); *Financial Software Systems, Inc. v. First Union National Bank*, 84 F.Supp.2d 594 (E.D. Pa. 1999).

However, the leading recent court of appeals case followed neither of those approaches. In *Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir. 2001), the Seventh Circuit, relying upon the history and context of the provision, determined the national bank jurisdiction statute should be construed to maintain jurisdictional parity between national banks and state banks or other state corporations. 253 F.3d at 987-93. n11 For diversity jurisdiction purposes, state banks and other state corporations are potentially citizens of two states -- the state of incorporation and the state where it has its principal place of business. See 28 U.S.C. § 1332(c)(1). And so the court concluded that national banks should be similarly treated. Since a national bank is not incorporated by a state, the court looked to the state designated in a national bank's organization certificate to serve as an analogue and concluded that a national bank is a citizen, for jurisdiction purposes, both of the state of its principal place of business and the state listed in its organization certificate. 253 F.3d at 993-94.

n11 The OCC filed an amicus brief in *Firstar Bank, N.A. v. Faul*, arguing in support of the position that section 1348 should be interpreted in a manner to achieve jurisdictional parity with state entities.

We believe the interpretation of the statute and fundamental reasoning of the *Firstar Bank, N.A. v. Faul* court are correct. National banks are to be treated for diversity jurisdiction purposes in a manner similar to state banks. However, the court's use of the state listed in the organization certificate as the analogue to the state of incorporation was incomplete. While most national banks do not change the location of their main office from the state originally listed in the organization certificate, some do. As set out above, the state that was listed in the original organization certificate can be changed under statutes that provide for changing the location of the main office. When this occurs, the original organization certificate document itself is not changed. The change in designation of the place of operations (including state) is reflected in other documents, particularly the articles of association. n12

n12 In *Firstar Bank, N.A. v. Faul*, the city and state of the bank's main office (Cincinnati, Ohio) was the same as it was when the bank was chartered in 1863 as The First National Bank of Cincinnati (Charter Number 24). Thus, the facts in the case did not present the issue raised by a subsequent

Exhibit A
Page 8

change in the designation of the place of operations.

Thus, a more complete statement of the position would be that a national bank is a citizen of the state in which its principal place of business is located and of the state that was originally designated in its organization certificate and articles of association or, if applicable, the state to which that designation has been changed under other authority (*i.e.*, the state in which its main office is currently located). We think this better comports with the underlying national bank corporate statutes and practice. It is also consistent with the reasoning in *Firstar Bank, N.A. v. Faul*. A national bank's change of its original designated state is akin to a state entity changing its state of organization by reincorporating in a new state. Moreover, if only the state actually listed in the original organization certificate is used, without some method to take account of later changes of main office, that could lead to the result of a national bank being deemed a citizen of a state with which it no longer had any contacts whatsoever.

## Conclusion

Accordingly, we conclude that, since Bank of America's main office is now in Charlotte, North Carolina, the Bank should be treated as a citizen of North Carolina for that part of the test in *Firstar Bank, N.A. v. Faul*.

Very truly yours,

*Eric Thompson*
Eric Thompson
Director
Bank Activities & Structure

Source: Legal > Area of Law - By Topic > Banking > Administrative Materials & Regulations > Agency Decisions > **Office Comptroller Currency Interpretative Letters (Pub & Unpub)**
Terms: **october 23, 2002** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Thursday, May 25, 2006 - 3:57 PM EDT



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.