UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT LOPEZ, et al.,<br><br>      Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA, N.A.,<br><br>      Defendant. | Case No. 10-cv-01207-JST<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**<br><br>Re: ECF No. 45 |

Before the Court is Plaintiffs' unopposed motion for preliminary approval of the settlement and for certification of the settlement class. ECF No. 45. For the reasons discussed below, the Court will GRANT the motion, with some modifications, conditionally certify the settlement class, direct the distribution of class notice, appoint class counsel and class representatives, and make a preliminary determination that the settlement is "fair, reasonable, and adequate" under Rule 23(e)(2) of the Federal Rules of Civil Procedure.

I.    **BACKGROUND**

This is a putative class action against Bank of America, N.A., brought on behalf of Bank of America employees who allegedly received wage statements that were inaccurate and for that reason failed to comply with California law. ECF No. 12 at 2. Plaintiffs allege two inaccurate-wage-statement theories: "(1) Defendants had a corporate policy and/or practice of preparing paycheck paystubs prior to the close of the payperiod, and (2) Defendants had a corporate policy and/or practice of issuing paycheck paystubs to non-exempt employees that fail to state the number of hours actually worked." ECF No. 45 at 21-22. In the present settlement, Plaintiffs seek

penalties for these violations provided by California Labor Code § 226(e). ECF No. 45 at 1.

Plaintiffs filed their initial complaint in state court in December 2007. ECF No. 45 at 3. The parties engaged in discovery and, since the case's inception, have participated in four full-day mediations. Two of those mediations occurred in 2009, while this case was in state court. ECF No. 45 at 6. The state court rejected the settlement that resulted from those mediations, so the parties then mediated a third time in March 2010. Id. at 6. As a result of that mediation, the parties signed a settlement agreement, but nearly simultaneously the action was removed to the federal court. Id.; ECF No. 1. On July 28, 2010 Judge James Larson conditionally certified the settlement the parties agreed to in March 2010, and certified the class proposed in that settlement. ECF No. 24; ECF No. 45 at 6.

In September 2010, the action was stayed pending resolution of similar complaints by a Multi-District Litigation ("MDL") court. ECF No. 29. Between the date of initial filing and the stay, Plaintiffs filed three amended complaints. ECF No. 12. While before the MDL court, the parties engaged in global settlement negotiations, which resulted in a May 3, 2013 settlement of the MDL action. Id. at 7. The MDL court carved out this action from that settlement. Id. In March 2014, in response to Plaintiff's motion for remand, this case was remanded to this Court. ECF No. 33.

On May 28, 2014, the Court held a case management conference at which it noted several potential problems with the proposed settlement and suggested the parties re-negotiate their settlement to address those problems. ECF No. 41.

On July 9, 2014 the parties participated in a private mediation, which resulted, on September 4, 2014, in the instant settlement agreement. ECF No. 45-2, Ex. A, ¶ 11. The parties now ask this Court to: (1) preliminarily approve the settlement, (2) conditionally certify the proposed settlement class, (3) authorize the mailing of the settlement notice, and (4) schedule a

final approval hearing.  ECF No. 45 at 2.

## II. CONDITIONAL CLASS CERTIFICATION

Class certification under Rule 23 is a two-step process.  First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)).

Second, a plaintiff must establish that one of the bases for certification in Rule 23(b) is met.  Here, by invoking Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met.  See Wal-Mart, 131 S. Ct. at 2551.

### A. Rule 23(a)(1)—Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Numerosity is satisfied here because the proposed settlement class includes approximately 53,770 members.  ECF No. 45 at 3.  Joinder of tens of thousands of individuals would be impracticable.

In addition, while not enumerated in Rule 23, "courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'"  Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).  "[A] class definition is

sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Id. (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

The Court finds that the class definition contained in the settlement agreement satisfies this requirement.

### B. Rule 23(a)(2)—Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). For the purposes of Rule 23(a)(2), even a single common question is sufficient. Wal-Mart, 131 S. Ct. at 2556 (internal quotations omitted). The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (quotation omitted).

The Court finds that the proposed class satisfies the commonality requirement because, at a minimum, the issue of Defendant's provision of inaccurate wage statements—as broken down by exempt versus non-exempt employees—as well as Defendant's defenses, apply to the class as a whole.

### C. Rule 23(a)(3)—Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The

test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The Court finds that the class representatives, Plaintiffs Albert Lopez and Rene Pompa, are typical of the class they seek to represent. They allege they suffered the same injury, in the same manner, as the proposed class—i.e., that they were Defendant's employees during the class period and received one or more wage statements during that period that were the subject of Defendant's unlawful payroll policies and practices. The claims of the entire class are based on Defendant's uniform conduct in providing inaccurate wage statements in violation of California law. All class members seek statutory penalties as a result.

### D. Rule 23(a)(4)—Adequacy of Representation

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000). The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158 n.13 (1982)). Among other functions, these requirements serve to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158 n.13. Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

No evidence in the record suggests that class representatives or class counsel have a conflict of interest with other class members. Plaintiffs' counsel is qualified and competent, and has had extensive experience prosecuting labor class actions, including wage actions similar to the present case. ECF No. 45-1 at 3-4. Moreover, Plaintiffs' counsel has ensured that the settlement differentiates between subdivisions of the proposed class—i.e., exempt versus non-exempt employees, and those who have otherwise released claims that are the subject of this action, see ECF No. 45 at 17—thereby demonstrating a commitment to tailoring the settlement so as to avoid conflicts among class subdivisions. The Court finds that proposed class counsel and the named Plaintiffs have and will continue to prosecute this action vigorously on behalf of the class. The adequacy requirement is therefore satisfied.

### E.     Rule 23(b)(3)—Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" Hanlon, 150 F.3d at 1022 (quotation omitted).

Here, the Court finds that the common questions raised by Plaintiffs' claims predominate over any questions affecting only individual members of the proposed class. In particular, Plaintiffs allege that Defendant provided class members inaccurate wage statements in violation of

the California Labor Code, either by incorrectly estimating hours that non-exempt employees worked, or by assuming that all exempt employees worked 86.67 hours per pay period, regardless of the time actually worked, and thereby causing inaccuracies in calculating sick, holiday, and vacation time. All class members are alleged to have been subject to the same practice of providing inaccurate statements. The predominance requirement is therefore satisfied.

Next, "[t]he superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." Id. at 1023. Here, because common legal and factual questions predominate over individual ones, the Court finds that the judicial economy achieved through common adjudication makes a class action superior to the alternative procedures for adjudicating the claims of the members of the proposed class.

\* \* \*

Because each element of Rules 23(a) and 23(b)(3) are satisfied, the Court finds that conditional certification of the proposed settlement class—defined as: Defendant's employees, (excluding Mortgage Loan Officers) who were employed in California and received one or more wage statements between December 31, 2006 and July 28, 2010, ECF No. 45-2, Ex. A at 5—is appropriate.

### F. Appointment of Class Representatives and Class Counsel

Because the Court finds that Plaintiffs Albert Lopez and Rene Pompa meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives.

In addition, when a court certifies a class, the court must appoint class counsel and must consider:

>  (i) the work counsel has done in identifying or investigating potential claims in the action;

>    (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>    (iii)  counsel's knowledge of the applicable law; and
>    (iv)   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel have thus far vigorously prosecuted this action by: (1) filing and amending Plaintiffs' complaint three times; (2) investigating class members' potential claims; (3) propounding and reviewing discovery; (4) analyzing data Defendant provided in discovery; (5) participating in four case-specific mediations and one global mediation; (6) negotiating two prior settlements, and achieving preliminary approval of one of those settlements; (7) negotiating this settlement agreement; and (8) briefing the instant motion for preliminary approval. In addition, Plaintiffs' counsel has significant prior experience prosecuting labor class actions. For these reasons, the Court will appoint Kenneth H. Yoon as lead class counsel and the remaining Plaintiffs' counsel as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

## III.  PRELIMINARY APPROVAL OF CLASS SETTLEMENT

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class. See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." City of Seattle, 955 F.2d at 1276. Where the parties reach a class action settlement prior to class certification, courts

apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate." Here, Plaintiffs ask the Court to take the first step in granting preliminary approval to the proposed settlement.

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079 (quotation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. Hanlon, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness. Id. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." Id.

The settlement provides $3.6 million as a gross settlement amount, with the amount of individual awards weighted according to the number of weeks individual class members worked. ECF No. 45 at 3. Attorneys' fees and costs, administrative costs, and service payments to class representatives will be paid from the settlement fund. Id. Plaintiffs' counsel seek $900,000 in attorneys' fees and costs, representing 25% of the gross settlement amount. Id. at 4. The settlement also provides for class representatives to receive $10,000 each. Id. at 5.

In addition, the settlement provides for $17,000 to be set aside for late-filing claimants. Id. Awards from the set-aside will be paid on a first-come, first-served basis; if claimants file claims after the set-aside is depleted, they will receive no award. Id. at 3-4.

Class members' recoveries are also weighted according to the legal theory on which their claims are based. ECF No. 45 at 9-10. Non-exempt employees, whose causes of action are based on the erroneous estimation of hours they actually worked, receive a full weighted share of the class settlement. Id. Exempt employees, whose causes of action are based on inaccurate calculations of sick, vacation, and holiday pay, receive 50% of what a non-exempt employee who worked the same number of weeks would receive. Id. The differentiation in recovery is based on the fact that non-exempt settlement class members have available to them theories of harm that are not available to exempt employees. Id. at 17. In addition, those class members who have signed a separate release of the claims covered by this settlement will receive 40% of what they would have otherwise received under this settlement. Id. at 4.

The settlement provides for no reversion to Defendants; instead, a *cy pres* beneficiary

related to workers' rights will receive any unclaimed settlement amount. ECF No. 45 at 19.

The Court finds that this settlement is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079.

First, while the Court previously expressed concerns that prior proposed settlements did not adequately protect the interests of the class and were too deferential to Defendants' interests, the present settlement resolves those concerns. Over the course of seven years, the parties have engaged in four mediations specific to their case, and a global settlement mediation as part of the MDL action. The instant settlement was reached at arms-length with the use of professional mediator.

Second, the settlement amount is adequate, even though it represents a relatively small percentage of the total potential recovery in the case. As Plaintiffs acknowledge, ECF No. 45 at 13, the potential recovery for the class could total hundreds of millions of dollars if the court were to impose the maximum amount of potential penalties, but Plaintiffs make a convincing case that the probability of that event is low. Several theories of liability would require meeting heightened standards of proof, "such as proof of intent and/or willfulness." Id. (citation omitted). Further, under an employer-friendly reading of California Labor Code § 226, each class member would only be entitled to a single $50 penalty, which is what class members will receive, on average, under the proposed settlement. Id. Finally, Plaintiffs contend: "[s]ettlements generally are looked upon based on the actual loss to the class, and [the instant settlement] achieves a payment where although there is a significant penalty, there is an extremely limited actual loss the putative class." Id. at 13.

Under these circumstances, the Court finds that Plaintiffs have adequately explained why a gross settlement amount of $3.6 million is fair, adequate, and reasonable in light of the strength of Plaintiffs' case, and the risk, expense, complexity, and likely duration of this litigation.

Third, the stage of the proceedings weighs in favor of approval. Though the settlement

1  was reached prior to class certification, the parties engaged in adequate discovery:  Plaintiffs
2  served formal discovery requests on Defendants, and in response, Defendants produced documents
3  reflecting its payroll records and policies.  ECF No. 45 at 14.  This included a sample of time and
4  payroll data relating to 5% of Defendant's non-Mortgage-Loan-Officer employees in California.
5  Id.  As a result of Defendant's production of discovery documents, Plaintiffs' counsel reviewed
6  thousands of pages of documents.  Id.  Plaintiffs also served on Defendants special and form
7  interrogatories.  ECF No. 45-2, ¶¶ 16-22.  The parties engaged in settlement-related discussions
8  and formal settlement negotiations during their four mediations.  ECF No. 45 at 14.  Moreover, the
9  parties litigated this case for more than seven years and agreed to two settlements before
10  proposing this one.  Plaintiffs have amended their complaint three times, and the action has
11  proceeded in the state court, before a different federal judge, before an MDL panel, and finally in
12  this Court.

Fourth, Plaintiffs' counsel is experienced in wage-statement litigation, has actively participated in the litigation of this action, and endorses the settlement.  ECF Nos. 45-1, 45-2.

Fifth, no governmental actor is relevant to this action, rendering the factor immaterial to the settlement approval process.

Sixth, the Court must wait until the final approval hearing to assess class members' reaction to the settlement.

Finally, the Court finds the parties' agreement with respect to attorneys' fees and service enhancement awards for named Plaintiffs Albert Lopez and Rene Pompa falls "within the range of possible approval."  The Court will evaluate the requests for fees and service enhancement awards at the final approval hearing, after Plaintiffs' counsel file their motion for fees and costs, and the class has an opportunity to object.

For the foregoing reasons, the Court will preliminarily approve the class action settlement.

## IV.    CONDITIONAL APPROVAL OF NOTICE PLAN

The class notice in a Rule 23(b)(3) class action must comport with the requirements of due process.  "[T]he plaintiff must receive notice plus an opportunity to be heard and participate in

litigation, whether in person or through counsel." The notice must be "the best practicable," "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Philips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) (citations omitted). "The notice should describe the action and the plaintiffs' rights in it." Id. Rule 23(c)(2)(B) provides, in relevant part:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." Id.

The parties propose to use Rust Consulting, Inc. as the claims administrator for the class. ECF No. 45 at 19. Rust will: mail notice to class members; perform skip traces to attempt to identify current addresses for class members whose notices are returned as undeliverable; calculate the amounts that each claimant is entitled to recover; and distribute to class members their recoveries under the settlement, including those set aside for class members who make late claims. ECF No. 45-2, Ex. A. In return, the parties propose to compensate Rust $100,000 from the gross settlement amount; Defendant will pay any amount Rust incurs above $100,000. ECF No. 45-2, Ex. A, ¶ 3.5.

The parties' proposed notice plan includes a mailed long-form notice combined with a claim form, and a follow-up postcard reminder. Id. ¶ 3.8. The long-form notice will be mailed to all settlement class members. Id. The notice identifies the parties to this action, and provides the class definition, opt-out and objection procedures, and the timeline for submitting claims, requesting exclusion, or objecting to the settlement. Id. Ex.1. It also provides background information regarding the case, a summary of settlement terms, the consequences of not opting-

out, submitting a claim or objecting to the settlement, and a description of the release claimants are agreeing to. Id. In addition, the notice provides Rust's address and telephone number. Id. Additional information is provided to those class members who have already signed releases of the class claims and thus are entitled only to 40% of what they would otherwise receive under the settlement.

To effect notice, Rust will use known addresses of members of the settlement class that Defendant provides. ECF No. 45 at 20. If mailed notice is returned as undeliverable, Rust will re-send the notice and claim form to any forwarding address provided, or if no forwarding address is provided, will run a skip-trace to identify a current forwarding address. Id. Postcard notice will be sent as a reminder to class members who have not submitted a claim form or requested exclusion within thirty days of the initial mailing. ECF No. 45-2, Ex. A, ¶ 3.8(c).

To opt-out of the settlement, putative class members must send a letter containing specified information to the settlement administrator. ECF No. 45-2, Ex. 1 at 9. The letter must be postmarked no later than the last day of the opt-out period. Id. To object to the settlement or to class counsel's application for attorneys' fees, costs, expenses, and service awards, class members must send a letter to the Clerk of this Court, class counsel, and Defendant's counsel. Id. at 8. All objections and requests for exclusion must be postmarked by the last day of the opt-out period. Id. at 8, 9.

The Court finds the parties' notice plan comports with due process requirements. In addition, the Court will approve the form of the proposed notices, subject to the following alterations:

1. Both postcard notice and the long-form notice shall provide class members a phone number with which they can directly reach class counsel;

2. All forms of notice shall provide class members instructions as to how to access the case docket via PACER or in person at any of the locations of the District Court for the Northern District of California;

3. Both the postcard and the long-form notice shall indicate that the hearing date for final approval of the settlement may change without further notice to the class (currently, only the long-form notice provides this information);

4. For a class member to request exclusion from the settlement, the only information the class member must provide in a letter to the settlement administrator is: (1) the class member's name and the last four digits of his or her Social Security number, (2) a statement that he or she wishes to be excluded from the settlement class in *Lopez v. Bank of America*, Case No. 10-cv-01207-JST, and (3) his or her signature. Class members' telephone numbers, addresses, and other information is not required, as is currently indicated in the long-form notice; and

5. Any objections to the settlement should only be mailed to the Court. Once received by the Court, the Clerk of the Court will file the objections on the Court's electronic filing system. As currently worded, the long-form notice requires objections to be sent to Plaintiffs' and Defendant's counsel, which is unnecessary, as electronic filing of an objection on the case docket constitutes service on the parties.

## CONCLUSION

For the foregoing reasons, the Court hereby:

1. GRANTS preliminary approval of the settlement,

2. Conditionally CERTIFIES the proposed settlement class,

3. APPROVES the proposed notice program, and the content of the notices with the modifications discussed above,

4. APPROVES and ORDERS that the proposed opt-out and objection procedures be undertaken, with the modifications discussed above,

5. APPOINTS Albert Lopez and Rene Pompa as class representatives,

6. APPOINTS Kenneth H. Yoon as lead class counsel and the remaining Plaintiffs' counsel as class counsel, and

7. SETS the final approval hearing for April 23, 2015. By November 17, 2014, Defendant shall submit to Rust a list identifying all class members and providing their contact information. Between 30-60 days after November 17, 2014 (i.e., December 17, 2014 through January 16, 2015), Rust will run a national change of address update and mail initial notice to each class member. Within 30 days after the date of the initial mailing, Rust will mail a postcard

reminder to all class members who did not file a claim form or request exclusion. The opt-out period shall begin on the date that the settlement administrator completes the initial mailed notice and end not sooner than March 17, 2015. Plaintiffs shall file their motion for final approval of the settlement, and their application for attorneys' fees, costs, expenses, and service awards no later than March 3, 2015.

**IT IS SO ORDERED.**

Dated: September 19, 2014

```
                                    _____
                                          JON S. TIGAR
                                       United States District Judge
```