1

2

3

4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    ALBERT LOPEZ, et al.,                Case No.  10-cv-01207-JST

           Plaintiffs,
8                                         ORDER GRANTING IN PART
                                          PLAINTIFFS' MOTION FOR FINAL
9        v.                               APPROVAL OF CLASS ACTION
                                          SETTLEMENT, ATTORNEYS' FEES
10   BANK OF AMERICA, N.A.,                AND COSTS, AND CLASS
                                          REPRESENTATIVES' SERVICE
           Defendant.                     PAYMENTS
11

12                                        Re:  ECF Nos. 49

13

14         Before the Court is Plaintiffs Albert Lopez and Rene Pompa's Motion for Final Approval

15   of Class Action Settlement, Attorneys' Fees and Costs, and Class Representatives' Service

16   Payments.  ECF No. 49.  Two members of the class, Besthines Maria Davis and John Vallarta,

17   have objected to the settlement.  ECF Nos. 51, 65.  The Court held two fairness hearings on April

18   23, 2015 and August 27, 2015.  For the reasons set forth below, the Court will grant in part the

19   Motion for Final Approval of Class Action Settlement, Attorneys' Fees and Costs, and Class

20   Representatives' Service Payments.

21   **I.      BACKGROUND**

22         This is a putative class action against Bank of America, N.A., brought on behalf of Bank of

23   America employees who allegedly received wage statements that were inaccurate and for that

24   reason failed to comply with California law.  ECF No. 12 at 2.  In the present settlement, Plaintiffs

25   seek penalties for violations under California Labor Code Section 226(e).  ECF No. 45 at 1.  A

26   more detailed description of the facts and claims at issue in this action, as well as the action's

27   procedural history, can be found in the Court's September 19, 2014 order, ECF No. 48.

28         In its September 19 order, the Court: (1) granted preliminary approval of the parties'

proposed settlement agreement and conditionally certified the putative class for settlement purposes; (2) appointed Plaintiffs Lopez and Pompa as class representatives; (3) appointed Kenneth Yoon as lead class counsel and the remaining Plaintiffs' counsel as class counsel; (4) approved the parties' proposed notice program as well as the content of the notices with certain modifications; and (5) approved and ordered that the proposed opt-out and objection procedures be undertaken with certain modifications.  ECF No. 48 at 15.

On March 3, 2015, Plaintiffs moved for final approval of their class action settlement. ECF No. 49.  Plaintiffs also filed a stipulation asking the Court to approve an additional postcard notice to class members who signed severance agreements with Bank of America between September 4, 2014 and the close of the claims period on March 17, 2015.  ECF No. 50.  The postcard would inform those class members that, despite their severance agreements, they were entitled to participate in the proposed settlement of the case.  Id.

At the April 23, 2015 settlement fairness hearing, the Court advised the parties that the postcard notices sent to class members did not include specific information the Court had previously ordered the notices to include in its preliminary approval order, ECF No. 48.  The parties agreed to remedy the error by sending additional postcard notices to class members, containing the Court-ordered revisions, and to extend the claims period by thirty days.  See ECF No. 61.  At the hearing, the Court also ordered Plaintiffs' counsel to provide further information in support of the request for attorneys' fees.

The Court then granted the stipulation providing additional notice for class members, approved the revised version of the reminder postcard, and approved the revised implementation schedule.  ECF No. 62.  Plaintiffs' counsel also submitted their supplemental declaration in support of their Motion for Attorneys' Fees.  ECF No. 63.

On August 27, 2015, the Court held another fairness hearing.

**A.      Settlement Agreement**

The settlement agreement defines the class as:

> All current and former employees of Bank of America, N.A., Banc of America Investment Services, Inc., and Bank of America

United States District Court
Northern District of California

> Corporation (collectively, the "Bank") who satisfy the following
> conditions:  A. Were or are employed by the Bank in California,
> except Mortgage Loan Officers (holding job code numbers SM009,
> SM031, SM097, SM157 and SM172) and Mortgage Loan
> Associates (holding job code number SM171), and received one or
> more wage statements during the period December 31, 2006 (March
> 25, 2008 for Financial Advisors) through July 28, 2010 ("Covered
> Period"), and  B. Were not employees of the Bank solely as a result
> of the mergers between the Bank and Countrywide or Merrill Lynch.

ECF No. 54-1 at 93.  The "Class Period" is December 31, 2006 through July 28, 2010.  Id.

Pursuant to the agreement, Defendant will create a non-reversionary settlement fund.  ECF No. 49 at 9.  The total settlement fund is $3,600,000, and from this the settlement agreement provides that the following amounts will be subtracted:  $900,000 in attorneys' fees and costs; $100,000 in administrative costs; $10,000 as individual incentive awards for both named plaintiffs; and $15,000 in penalties paid to the California Labor & Workforce Development Agency.  ECF No. 54-1 at 94, 96.  The remaining amount will be paid "on a pro rata basis to qualified Class Members based on the number of weeks each claimant worked during the relevant period."  Id. at 94.  In return for accepting the settlement, Plaintiffs have agreed to release Defendant from all claims that

> arise from this Action during the Release Period, under Labor Code
> section 226; PAGA claims and B&P Code Section 17200 relating to
> Labor Code section 226, and including any related claims pertaining
> to defective pay stubs, improper record-keeping, and related
> statutory and civil penalties, and including interest, attorneys' fees
> and costs; and Labor Code section 203 claims arising out of Labor
> Code section 226, including interest, attorneys' fees and costs.

ECF No. 54-1 at 95.  Class members who are "bound by a separate release that covers the same claims" will receive 40% of what they would otherwise receive under the settlement.[1]  Id.  Class members who signed a severance agreement with Defendant between September 4, 2014 and March 17, 2015 are still entitled to participate.  ECF No. 50.

**B.     Jurisdiction**

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the

---

[1] Class members are potentially subject to such releases because (1) Bank of America is or was a defendant in other employment litigation involving the same employees, and (2) some employees signed releases as part of severance agreements with the bank.

3

parties are minimally diverse, and the amount in controversy exceeds $5 million.

## II.     FINAL APPROVAL OF THE SETTLEMENT

### A.     Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. Pro. 23(e).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998).  In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  Id. at 1026.  In order to assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement

Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also require a higher standard of fairness.  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such settlements, in addition to considering the above factors, the court must also ensure that "the settlement is not the product of collusion among the negotiating parties."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946-47 (9th Cir.2011) (internal quotation marks and citations omitted).

### B.     Analysis

As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable.

#### 1.     Adequacy of notice

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."  Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

United States District Court
Northern District of California

The Court previously approved, with alterations, the parties' proposed plan for providing notice to the class.  ECF No. 48 at 14-15.  The parties have shown that the class administrator has fulfilled the notice plan by correctly preparing the class list, mailing notice to class members via first class mail, and performing address traces to re-mail the notice to class members whose mail was returned undeliverable.  ECF No. 67 at 3-5.  As of August 13, 2015, only 1,146 notices (representing 2.13% of the class) remain undeliverable due to the inability to identify a current address.  ECF No. 67 ¶ 13.

As the Court required in its Order Granting Motion for Preliminary Approval of Settlement, see ECF No. 48 at 13-14 (stating court-ordered alterations to the proposed notice plan), the parties modified the long form notice form by: (1) adding a phone number with which the class could directly reach class counsel, ECF No. 54-1 at 94; (2) providing class members instructions as to how to access the case docket, id. at 98; (3) indicating that the hearing date for final approval of the settlement may change without further notice to the class, id.; (4) indicating that objections to the settlement should only be mailed to the Court, id. at 97; and (5) providing other background information, see id. at 93-98.

Although the parties complied with the Court's order to amend the long form notice, they did not fix certain deficiencies the Court identified in the postcard notice.  Compare ECF No. 59 with ECF No. 48 at 14-15.  Specifically, the Court stated:

> the Court will approve the form of the proposed notices, subject to the following alterations:
>
> 1. [The] postcard notice . . . shall provide class members a phone number with which they can directly reach class counsel;
>
> 2. All forms of notice shall provide class members instructions as to how to access the case docket via PACER or in person at any of the locations of the District Court for the Northern District of California;
>
> 3. [T]he postcard . . . notice shall indicate that the hearing date for final approval of the settlement may change without further notice to the class (currently, only the long-form notice provides this information) . . . .

ECF No. 48 at 14.  The postcard notices were not altered in the manner the Court ordered in items

1 through 3, above.  See ECF No. 59, Ex. A (postcard mailed on February 13, 2015), Ex. B (postcard mailed on March 18, 2015).  Subsequently, the parties agreed to send an additional postcard notice to class members and to extend the claims period by thirty days.  ECF No. 62. The additional postcard notice complied with the Court's ordered alterations.  ECF No. 67, Ex. A.

In light of the foregoing, the Court finds the parties have provided the best practicable notice to class members.  See Boring v. Bed Bath & Beyond, No. 12-CV-05259-JST, 2014 WL 2967474, at *1 (N.D. Cal. June 30, 2014) (finding adequate notice where parties implemented approved notice plan and only "twenty-seven of the 1,374 class notices [representing 1.97% of the notices initially sent] were returned undeliverable after a second attempt and a skip trace.").

### 2.      Fairness, adequacy, and reasonableness

#### a.      Strength of Plaintiffs' case

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.  Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, Plaintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims, given the uncertainties surrounding class certification and their ability to prove Defendant's intent to violate the California Labor Code, which is required to obtain large penalties under the Code.  ECF No. 48 at 11, 18.  These weaknesses weigh in favor of approving the settlement.  See Moore v. Verizon Commc'ns Inc., No. C 09-1823 SBA, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of the defendant's case favored settlement because plaintiffs admitted they would face hurdles in establishing class certification, liability, and damages).

#### b.      Risk of continued litigation

Difficulties and risks in litigating weigh in favor of approving a class settlement.  See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

This factor supports final approval of the settlement because if the parties did not settle, Plaintiffs would have to proceed through class certification, summary judgment, and trial.  ECF

1   No. 48 at 19.  This process could take years, as the parties "made little progress" during the time

2   the case was part of the multidistrict litigation action.  See ECF No. 45 at 19.  Also, without a

3   settlement, Defendant would strongly contest class certification because it "defeated class

4   certification in the related MDL action."  Id.  Furthermore, even if Plaintiffs succeeded in class

5   certification and at trial, Defendant would probably appeal any adverse decision.  Id.

### c.    Risk of maintaining class-action status

7   Although Plaintiffs "believe certification is warranted[,]" class counsel acknowledges that

8   maintaining "class certification has its risks."  ECF No. 45 at 19.  Plaintiffs' concern is not without

9   basis, because Defendant "defeated class certification in the related MDL action."  Id.  Thus, the

10   potential difficulties associated with maintaining class certification in this case weigh in favor of

11   approving the settlement.  See McKee Foods, 716 F. Supp. 2d at 851 (holding that this factor

12   supports approving a settlement when both parties acknowledge the possibility of decertification).

### d.    Settlement amount

14   As the Court noted earlier, this proposed settlement "represents a relatively small

15   percentage of the total potential recovery in the case."  ECF No. 48 at 11.  Nevertheless, the Court

16   finds that it is fair to approve the settlement.  Plaintiffs can obtain the maximum amount of

17   potential penalties only by meeting heightened standards of proof—e.g., that Defendant willfully

18   violated the Labor Code.  Also, as explained in the Court's order preliminarily approving the

19   settlement, the settlement amount tracks what each class member would receive "under an

20   employer-friendly reading of California Labor Code Section 226 . . . ."  Id.  Although $3.6 million

21   is far from the maximum amount class members could have recovered had they prevailed at trial,

22   "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential

23   recovery does not per se render the settlement inadequate or unfair."  In re Omnivision Techs.,

24   Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008).  Because of the risk, expense, complexity, and

25   likely duration attached to the litigation of these claims, the Court finds that a settlement based on

26   that fraction is fair and reasonable.

### e.    Extent of discovery

28

United States District Court
Northern District of California

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459 (citation omitted).

Here, Plaintiffs assert that "the parties gathered a significant amount of information." ECF No. 45 at 22. The parties exchanged "payroll data [from] the Defendants' employees," Defendant's written policies and plans, and other information necessary to evaluate settlement. ECF No. 45 at 22. Furthermore, "Plaintiffs' counsel reviewed thousands of pages of documents[,]" the parties participated in four mediations, and the litigation lasted over seven years. ECF No. 48 at 12. The Court is persuaded that the parties conducted sufficient discovery to make an informed decision regarding the adequacy of the settlement. See In re Omnivision, 559 F. Supp. 2d at 1042 (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation).

### f.      Counsel's experience

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." Id. at 1043 (citation omitted).

Here, the lead class counsel, Kenneth Yoon, has demonstrated that he is informed about the current dispute. Yoon also "is experienced in wage-statement litigation, has actively participated in the litigation of this action, and endorses the settlement." ECF No. 48 at 12. No one has provided the Court any evidence to contradict this assertion. Accordingly, lead class counsel's endorsement weighs in favor of approving the settlement. See, e.g., In re Omnivision, 559 F. Supp. 2d at 1043 (finding class counsel's recommendation in favor of settlement presumptively reasonable, as counsel demonstrated knowledge about the case and securities litigation in general).

### g.      Presence of a governmental participant

There is no governmental participant here. Therefore, the Court does not consider this factor.

### h.    Reaction of the class

Class members' positive reaction to a settlement weighs in favor of settlement approval; "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement [] are favorable to the class members." Id. (citation omitted).

As of August 13, 2015, of 53,770 class members, 54 (1.00%) had opted out of the settlement, and only two have filed an objection.  ECF No. 67 ¶ 21.  As of the same date, 13,524 class members—25.15% of the class—had opted into the settlement.  Id. ¶ 20.  Accordingly, the settlement appears favorable to class members.  See, e.g., McKee Foods, 716 F. Supp. 2d at 852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Vill., 361 F.3d at 577 (approving a settlement with forty-five objections and 500 opt-outs from a 90,000-person class, representing 0.05% and 0.56% of the class, respectively).

### 3.    Absence of collusion

Because this settlement was reached prior to certification of the class, the Court must examine the settlement for evidence of collusion with a higher level of scrutiny.  In re Bluetooth, 654 F.3d at 946.  In conducting such an examination, courts must be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  Id.  Signs of collusion include, but are not limited to: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendants rather than to be added to the settlement fund.  Id. at 947.

The first Bluetooth factor weighs against a finding of collusion.  Plaintiffs' counsel move for an award of $849,983.57 in fees, or 23.6% of the settlement fund.  ECF No. 49 at 7.  In addition, Plaintiffs' counsel request $50,016.43 in expenses, $15,000 in penalties to be paid to the California Labor & Workplace Development agency, and $100,000 in settlement administration costs.  Subtracting these amounts from the settlement fund, the class will be left with $2,585,000 – almost three times what Plaintiffs' counsel will receive. This proportion does not indicate

United States District Court
Northern District of California

1    collusion. The second <u>Bluetooth</u> factor also weighs against such a finding, because the settlement

2    does not contain a clear sailing provision.  As to the third factor, the settlement provides for no

3    reversion to Defendants; instead, a *cy pres* beneficiary related to workers' rights will receive any

4    unclaimed settlement amount.  ECF No. 45 at 19.  The <u>Bluetooth</u> factors do not indicate collusion in

5    reaching the settlement.

6        The Court finds the settlement fair, reasonable, and adequate, and grants Plaintiffs' motion

7    for final approval of the settlement.

8    **III.    ATTORNEYS' FEES**

9        **A.    Legal Standard**

10       Here, Plaintiffs assert claims under California law and the Court's jurisdiction is premised

11   on diversity.  <u>See</u> ECF No. 12, ¶¶ 1, 6.  California law therefore governs the determination of

12   attorneys' fees.  <u>See</u> <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because

13   Washington law governed the claim, it also governs the award of fees.") (citation omitted).

14   Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys'

15   fees.  <u>See</u> <u>Apple Computer, Inc. v. Superior Court</u>, 126 Cal. App. 4th 1253, 1264 n. 4 (2005)

16   ("California courts may look to federal authority for guidance on matters involving class action

17   procedures.").

18       "Where a settlement produces a common fund for the benefit of the entire class, courts

19   have discretion to employ either the lodestar method or the percentage-of-recovery method."  <u>In re</u>

20   <u>Bluetooth</u>, 654 F.3d at 942; <u>see</u> <u>Lealao v. Beneficial California, Inc.</u>, 82 Cal. App. 4th 19, 27

21   (2000) ("Despite its primacy, the lodestar method is not necessarily utilized in common fund

22   cases.").  "The lodestar figure is calculated by multiplying the number of hours the prevailing

23   party reasonably expended on the litigation (as supported by adequate documentation) by a

24   reasonable hourly rate for the region and for the experience of the lawyer."  <u>In re Bluetooth</u>, 654

25   F.3d at 941. "Because the benefit to the class is easily quantified in common-fund settlements,"

26   courts can "award attorneys a percentage of the common fund in lieu of the often more time-

27   consuming task of calculating the lodestar."  <u>Id.</u> at 942.

28

United States District Court
Northern District of California

1     "[E]ven though a district court has discretion to choose how it calculates fees . . . it abuses

2     that discretion when it uses a mechanical or formulaic approach that results in an unreasonable

3     reward."  In re Bluetooth, 654 F.3d at 944 (internal quotation marks omitted).  Thus, the Ninth

4     Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their

5     calculations against a second method."  Id.; see also In re Sutter Health Uninsured Pricing Cases,

6     171 Cal. App. 4th 495, 512 (2009) (affirming attorneys' fee award calculated as a percentage of

7     recovery with a lodestar cross-check).

8         **B.        Analysis**

9         The settlement class fund totals $3.6 million.  ECF No. 49 at 3.  Class counsel seeks 25%

10    of the gross settlement fund, totaling $900,000, to cover attorneys' fees and costs.  Id. at 7.

11    Excluding costs of $50,016.43, the fee request for $849,983.57 represents 23.61% of the gross

12    settlement fund.  Id.  When using a percentage-of-recovery method, "courts typically calculate

13    25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in

14    the record of any 'special circumstances' justifying a departure."  In re Bluetooth, 654 F.3d at 942

15    (citations omitted); see also Lealao, 82 Cal. App. 4th at 24 n.1.  To support the fee award,

16    Plaintiffs contend that the requested fees are reasonable because they fall below the 25%

17    benchmark and because of the length of litigation, the complicated nature of the case, and the

18    significant benefit obtained on behalf of the class.  Id. at 8-9.  Plaintiffs also argue that equivalent

19    fees has been awarded in similar cases, and the reasonableness of the fees is confirmed by a cross-

20    check against Plaintiffs' lodestar.  Id. at 9-10.

21        In support of their motion, Plaintiffs assert that their total lodestar is $1,204,610 and that

22    the lodestar exceeds the amount requested.  Plaintiffs initially filed very general information in

23    support of their motion for fees.  See Decl. of Kenneth H. Yoon, ECF No. 49-1; Decl. of Peter M.

24    Hart, ECF No. 49-2; Decl. of Travis Hodgkins, ECF No. 49-3.  Plaintiffs' submissions did not

25    document the tasks each attorney performed, the hours spent on various types of tasks, and the

26    relation of those tasks to the litigation.  As a result, the Court could not cross-check the

27    percentage-of-recovery method with the lodestar method of calculating fees to ensure that the

28

United States District Court
Northern District of California

11

requested fee amount was reasonable.  At the fairness hearing on April 23, 2015, the Court requested that Plaintiffs' counsel submit more specific records of hours worked on the case. Plaintiffs' counsel has submitted supplemental statements and information in response to the Court's request.  See ECF No. 63.

Peter Hart detailed the following rates and hours, see ECF No. 63-1, Ex. A at 45:

| Attorney | Rate/hour | Hours spent | Amount |
|---|---|---|---|
| Peter Hart | $675 | 311.55 | $210,296.25 |
| Leslie Banayad (contract) | $400 | 60.2 | $24,080 |
| Michelle Cheung (contract) | $350 | 181.6 | $63,420 |
| Melissa Coyle | $475 | 87.1 | $41,372.50 |
| Lisa Oh (contract) | $375 | 24.6 | $9,225 |
| Kimberly Westmoreland | $475 | 209.8 | $99,655 |
| Amber Healy | $475 | 45 | $21,375 |
| Travis Hodgkins | $475 | 18.9 | $8,977.50 |
| | | 938.75 | $478,401.25 |

Kenneth Yoon detailed the following rates and hours, see ECF 63-2 ¶ 15:

| Attorney | Rate/hour | Hours spent | Amount |
|---|---|---|---|
| Kenneth Yoon | $475-$675 | 618.3 | $373,490 |
| Linda Whitehead | $446 (average) | 53.6 | $23,912.50 |
| Sylvia Hwang | $341 (average) | 49 | $16,725 |
| Stephanie Yasuda | $411 (average) | 214.4 | $88,330 |
| David Theaker | $450 | 56.1 | $25,245 |
| Katherine Kehr | $425 | 74.1 | $31,492.5 |
| Verlan Kwan (contract) | $375 | 207.9 | $77,962.5 |
| Lisa Oh (contract) | $350 | 24.6 | $8,610 |
| Timothy Fuller (contract) | $325 | 243 | $78.975 |

| | | 1,541.0 | $724,742.5 |
|---|---|---|---|

Eric Honig detailed the following rates and hours, see ECF No. 63-3 ¶¶ 5, 19:

| Attorney | Rate/hour | Hours spent | Amount |
|---|---|---|---|
| Eric Honig | $600 | 20.5 | $12,300 |

The total of these claimed fees is $1,215,443.75, but Plaintiffs' counsel double-counted Lisa Oh's work, which requires a deduction of $9,225, leaving a total of $1,206,218.75, based on 2,475.65 hours of work.  The lodestar multiplier is 0.70.  That figure is well below the lodestar amounts approved in other cases, Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051 (9th Cir. 2002) (approving a lodestar multiplier of more than three); Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 334 (N.D. Cal. 2014) (approving attorneys' fees that resulted in lodestar multiplier of 2.83); In re Google Referrer Header Privacy Litig., No. 5:10-CV-04809-EJD, 2015 WL 1520475, at *10 (N.D. Cal. Mar. 31, 2015) (lodestar multiplier of 2.2), and the requested award would not "yield windfall profits for class counsel in light of the hours spent on the case."  In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011).

After careful review of class counsel's declarations and filings, including their supplemental declarations, the Court concludes that an attorneys' fees award of $849,983.57, or 23.61% of the award, is appropriate.

IV.    **EXPENSES**

    A.    **Legal Standard**

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."  Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).  To support an expense award, Plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable.  Wren v. RGIS Inventory Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011); see also Dyer, 303 F.R.D. 326, supplemented, Case No. 3:13-cv-02858-JST, at ECF 52 (Oct. 31, 2014).

**B.** **Analysis**

Here, Plaintiffs provided an itemized list of the costs incurred during this litigation, separated by category.  Decl. of Kenneth H. Yoon, ECF No. 49-1, ¶ 15; Decl. of Peter M. Hart, ECF No. 49-2, Ex. A.  Most of the expenses incurred resulted from mediation and traveling to hearings.  Id.  Overall, the Court finds the charged costs reasonable.  The Court therefore holds that Yoon is entitled to reimbursement of $21,557.83 and that Hart is entitled to reimbursement of $28,458.60.[2]

**V.** **INCENTIVE AWARDS**

**A.** **Legal Standard**

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments."  Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).  "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  Rodriguez, 563 F.3d at 958-59 (internal citation omitted).  Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation."  Staton, 327 F.3d at 977 (citation and internal quotations and alterations omitted).  Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).

**B.** **Analysis**

Plaintiffs request enhancement awards of $10,000 each for Lopez and Pompa.  ECF No. 49 at 17.  This is more than typical enhancement awards in the Ninth Circuit, where $5,000 is

---

[2] The Court notes that attorney Honig submitted a declaration but did not include an itemized list of the costs incurred during this litigation.  See Decl. of Eric Honig, ECF No. 63-3.

United States District Court
Northern District of California

presumptively reasonable.  See Harris v. Vector Marketing Corp., 2012 WL 381202, at *7 (N.D. Cal. 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.") (citations omitted).

Plaintiffs assert that $10,000 is appropriate for the following reasons:  both men worked many hours on the case, ECF Nos. 49-4, ¶ 4 (Lopez declaring he worked 80 hours), 49-5, ¶ 6 (Pompa declaring he worked over 100 hours); both men took on significant career risks, Lopez being eventually terminated, perhaps in part because of his participation in this action, and running the risk that Defendant, as a former employer, will provide a negative recommendation to potential employers,  ECF No. 49 at 12, ECF No. 49-4, ¶ 2, and Pompa moving into a different career path as a result of having trouble finding work in the banking industry, ECF No. 49-5, ¶¶ 3, 4; both men signed a broader release than unnamed class members did, ECF No. 45-2 at 24; and Defendant fixed the underlying problem with the allegedly non-compliant pay stubs, ECF No. 45-2 at 41.

While the Court acknowledges these points, it will not award Lopez and Pompa $10,000 for at least three reasons.

First, an award of $10,000 is disproportionate to the average class member's recovery. When determining if an incentive payment is reasonable, courts consider the proportionality between the incentive payment and the range of class members' settlement awards.  See Burden v. SelectQuote Ins. Servs., No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (reducing a $10,000 enhancement award by a half when "the $10,000 incentive award is nearly three times the largest amount paid to any class member"); Ko v. Natura Pet Prods., Inc., No. C 09-02619 SBA, 2012 WL 3945541, at *14-15 (N.D. Cal. Sept. 10, 2012) (awarding $5,000 instead of $20,000 where the average award to class members was $35).

Here, $10,000 is approximately forty-eight times greater than the average payout to individual class members.[3]  After subtracting from the settlement fund ($3,600,000) requested

---

[3] The parties have not specified the average payment that class members expect to receive; the

attorneys' fees and expenses ($900,000), claims administration costs ($100,000), and penalties to be paid to California Labor & Workforce Development Agency ($15,000), and then dividing the remaining $2,585,000 by the number of class members opting in (13,524), an average class member will receive $191.14 as her share of the settlement.  $10,000 is more than 50 times that amount.  This large discrepancy weighs against awarding the named plaintiffs more than $5,000.

Second, neither Lopez nor Pompa played an especially active role in this litigation.  When evaluating incentive awards, courts consider if the plaintiffs actively assisted the litigation.  See Fleury v. Richemont N. Am, Inc., No. C-05-4525 EMC, 2008 WL 3287154, at *6 (N.D. Cal. Aug. 6, 2008) (awarding $5,000 incentive award where plaintiff was involved in litigation for three years, sat for a deposition, responded to written discovery, and attended a mediation session); Burden, 2013 WL 3988771, at *6 (awarding $5,000, rather than requested $10,000, where the named plaintiff "was deposed twice, attended three settlement conferences, and spent a total of 80 hours" on the case); Garner v. State Farm Mut. Auto. Ins. Co., No. C-08-1365 CW (EMC), 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (approving a "well justified" award of $20,000 to the single named plaintiff who lent her name to the case, thereby "subjecting herself to public attention," and "made herself available for deposition on two separate occasions, wherein she was subjected to questioning regarding her personal financial affairs and other sensitive subjects; met with the class counsel on six separate occasions; attended the full-day Court-ordered appraisal hearing; spoke with the class counsel and their staff on many occasions; reviewed all major pleadings; and repeatedly responded to interrogatories and document requests.").

Here, although both named representatives claim they worked many hours on the case, they were not active in the litigation.  They did not testify.  They were not deposed.  And they did not participate in any of the four mediations.  Lopez and Pompa provide only broad statements regarding how they assisted their attorneys, which are not enough to justify $10,000 incentive

---

Court could, but does not, deny their request on this basis alone.  See Otey, 2014 WL 1477630, at *10 ("The court cannot conclude that the requested awards are reasonable, however, because Plaintiffs do not provide any information as to how much money each class member is expected to receive, or what the average recovery for each class member will be.").

1  awards.  The Court therefore does not find that adjusting the incentive upward from $5,000 is

2  appropriate.

3        Third, the parties agreed that incentive awards will be paid from the settlement fund, as

4  opposed to separately by Defendant.  ECF No. 54-1 at 94; cf. Dyer, 303 F.R.D. at 336 (finding

5  that an agreement "requir[ing] Wells Fargo to pay the incentive awards, so class members will not

6  fund the awards," favors an award higher than $5,000).  An increase to Lopez and Pompa comes at

7  the class's expense.  This fact also weighs against an upward adjustment from the presumptive

8  $5,000 award.

9        Based on these considerations, the Court finds that the presumptively reasonable

10 enhancement award of $5,000 each is appropriate to compensate Lopez and Pompa for the time

11 and effort they spent in connection with this litigation and the risks they took on behalf of their

12 fellow class members.

**VI.    SETTLEMENT ADMINISTRATION COST**

13

14      Pursuant to the settlement terms, "the Claim Administrator is to be reimbursed [$100,000]

15 for its costs, to be paid out of the Settlement Amount."  ECF No. 49 at 20.  The parties have

16 agreed that if "the final costs of administration exceeds . . . $100,000.00, Defendant shall be solely

17 responsible for paying the difference" and that "such payment shall not be made from the

18 Settlement Amount."  Id.  Considering that there are 53,770 class members, the Court finds paying

19 $100,000 in administrative costs reasonable, as that amount works out to just under two dollars

20 spent per class member.

**VII.   PAYMENT TO THE CALIFORNIA LABOR AND WORKFORCE
         DEVELOPMENT AGENCY**

21

22      The parties have agreed that $15,000 from the settlement fund will be paid to the

23 California Labor & Workforce Development Agency, as "civil penalties provided for in the

24 Private Attorneys General Act of 2004 . . . ."  ECF No. 54-1 at 96.  The Court finds this reasonable

25 and approves the payment.

**VIII.  OBJECTIONS TO THE SETTLEMENT**

26

27      Two class members, Besthines Maria Davis and John James Vallarta, object to the

28

United States District Court
Northern District of California

17

settlement.

Besthines Maria Davis mailed one objection to Rust.  ECF No. 56.  Davis also filed her objection with the Court.  ECF No. 51.  Davis objects to the settlement on eleven grounds.  See id. at 3-6.[4]

First, Davis alleges that she was "depriv[ed] of the opportunity to thoroughly investigate the fairness of the agreement" because "the claim administrator failed to send Davis her claim form . . . until March 12, 2015 . . . ."  ECF No. 51 at 2.  But Rust states that it mailed Davis her claim notice on January 16, 2015, and a reminder notice on February 13, 2015, and that neither was returned as undeliverable.  ECF No. 56 at 6.  The Court has no reason to doubt Rust's credibility and does not find that the parties deprived Davis of the right to fully investigate the fairness of the settlement.

Second, Davis argues that the parties have "unfairly truncated the class period . . . ."  ECF No. 51 at 3.  This claim is unpersuasive.  The class period for this case runs from December 31, 2006 through July 28, 2010.  ECF No. 54-1 at 93.  Employees who worked at Bank of America after July 28, 2010 could have been "adequately compensate[d]" by participating in the multidistrict litigation In Re Bank of America Wage and Hour Employment Practices Litigation,

---

[4] The Court also received a "joinder notice" to Davis's objection filed by Randall Pittman.  ECF No. 52.  Pittman is not a member of the class.  "Under Fed.R.Civ.P. 23(e)(5), any *class member* may object to a proposed class settlement. Thus, 'non-class members have no standing to object.'" In re Hydroxycut Mktg. & Sales Practices Litig., No. 09CV1088 BTM KSC, 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) (quoting Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir.1989)). It also bears mention that several other courts and adjudicative bodies have declared Pittman to be a vexatious litigant.

In that connection, the Court grants Defendant's requests for judicial notice of the existence of the following public records:  (1) Pittman v. Beck Part Apartments LTD, et al., Case No. BC410261 (May 28, 2010) (order declaring Pittman a vexatious litigant); (2) Candis Maninang v. Randstand Employment Solutions, L.P., et al., Case No. D061124 (December 27, 2011) (order acknowledging that Pittman is a vexatious litigant); (3) Department of Labor's April 3, 2014 ruling dismissing Case No. 2013-SOX-00030 (directing Pittman to "cease and desist from filing complaints against Respondents"); (4) Inderbitzen v. Bank of America, Case No. 37-201 0-00099388-CU-BT-CTL (March 14, 2014) (listing Pittman's history of vexatious filings); (5) Wallace, et al. v. Countrywide Home Loans, Inc., et al., Case No. SACV 08-1463-JLS (MLGx) (C.D. Cal. 2014) (order denying Pittman's motion for intervention); (6) Pineda v. Bank of America N.A., Case No. CGC 07-468417 (first amended complaint); and (7) Wallace, et al. v. Countrywide Home Loans, Inc., et al., Case No. SACV 08-1463-JLS (MLGx) (second amended complaint).  See Lee v. City of L.A., 250 F.3d 668, 688-90 (9th Cir. 2001).

1   MDL No. 2138.  And the front end of the class period is limited by the applicable statute of

2   limitations.  As a result, the Court does not find that the parties unfairly truncated the class period.

3          Third, Davis argues that the settlement agreement "requires the class members to release

4   claims that were not actually litigated . . . and . . . allows Plaintiff to litigate claims that he has no

5   standing to litigate."  ECF No. 51 at 3.  Davis' characterization of the release is incorrect.  The

6   settlement includes a general release for the class members, under which only California Labor

7   Code section 226 claims are released.  ECF No. 54-1 at 95.

8          Fourth, Davis argues that the settlement agreement is unconscionable because the

9   Defendants "failed to provide any proof" that Davis had previously released part of the claims at

10  issue here as a result of a prior settlement (in Dunlap, et al. v. Bank of America, N.A., Case No.

11  BC 328934), and therefore that she was entitled only to a reduced payment in this action.  ECF

12  No. 51 at 3.  Once again, Davis's assertion is not true.  The Dunlap release covers a period from

13  February 2001 to January 2007 and thus overlaps with this case for only four weeks.  See ECF No.

14  56, Ex. A.  And more importantly, on March 22, 2007, Rust mailed Davis the Dunlap claims

15  notice, which was not returned as undelivered.  Id., ¶ 16 & Ex. A.  The Court therefore finds that

16  Davis received notice and proof of her release in the Dunlap case.

17         Fifth, Davis contends that the Court should not approve the settlement agreement, as "[t]he

18  class members should be paid additional penalties because they can prove willfulness."  ECF No.

19  51 at 3.  Davis provides no evidence in support for this proposition, and the Court is not persuaded

20  by it.

21         Sixth, Davis objects because she "has reason to believe that thousands of class members

22  did not receive their claims . . . ."  ECF No. 51 at 4.  Davis provides no support for this assertion

23  and it is contradicted by the evidence of notice recited elsewhere in this order.  Davis's argument

24  is unfounded.

25         Seventh, Davis contends that "this case should be stayed pending the resolution of the

26  earlier filed cases entitled Wallace, et al. v. Countrywide Home Loans, Inc., et al. and Pineda v.

27  Bank of America N.A."  ECF No. 51 at 4.  But Wallace does not involve Defendant, see Case No.

28

United States District Court
Northern District of California

1    SACV 08-1463-JLS (MLGx), ECF No. 55 at 61-123 (second amended complaint), and the class

2    definition here expressly excludes "Mortgage Loan Officers" and "Mortgage Loan Associates."

3    ECF No. 54-1 at 93.  As for <u>Pineda</u>, the plaintiffs there have not asserted Labor Code section 226

4    claims.  <u>See</u> <u>Pineda</u>, Case No. CGC 07-468417 (first amended complaint), ECF No. 55 at 52-59.

5         Eighth, Davis objects "on the grounds that the attorneys' fees requested are too high and

6    unwarranted."  ECF No. 51 at 4.  The Court has already addressed the reasonableness of the

7    requested attorneys' fees elsewhere in this order.

8         Ninth, Davis argues that "the class members were denied their right to an evidentiary

9    hearing to determine the fairness and adequacy of the settlement."  ECF No. 51 at 5.  This

10   argument is meritless; Davis had the opportunity to argue her case during the final approval

11   hearings on April 23, 2015 and August 27, 2015.  As to the contention that the parties should have

12   allowed class members "to speak to Plaintiff and to the mediator" before settling, Davis fails to

13   cite to any authority for her position.

14        Tenth, Davis argues that the settlement "appears to have been tainted by fraud and

15   collusion [because] Class Counsel and mediator David Rotman are under investigation by the

16   [SEC and DOJ] for alleged fraud that was committed in other class actions."  ECF No. 51 at 5.

17   Davis provides no support for this accusation, and the Court disregards it.  Moreover, the Court

18   held in its order granting preliminary approval of the settlement that "this settlement is the product

19   of serious, informed, non-collusive negotiations . . . ."  ECF No. 48 at 11.

20        And eleventh, Davis objects on the grounds that "PAGA penalties released in this action

21   are barred by the doctrine of promissory estoppel."  ECF No. 51 at 6.  This objection, however, is

22   based on a settlement that putative objector Pittman reached in a separate case that did not involve

23   third parties.  <u>See</u> ECF No. 52 at 7 ("except Randall Pittman shall not release any claim for civil

24   penalties").  Pittman is not a class member and has not shown that he otherwise has standing in

25   this matter.

26        Class member John James Vallarta also objects to the settlement.  ECF Nos. 64, 65.

27   Vallarta's objection, however, focuses on benefits owed on his pension plan, whereas the claims at

28

United States District Court
Northern District of California

1    issue in this lawsuit deal with itemized wage statements.  ECF No. 65 (sealed).

2         In short, the objections do not undermine the Court's conclusions that the proposed

3    settlement is fair, reasonable, and adequate.

4    **X.     CONCLUSION**

5         For the foregoing reasons, the Court orders as follows:

6    1.   For the reasons set forth in its September 19, 2014 order, the Court confirms its
         certification of the class for settlement purposes only.

7

8    2.   The Court grants final approval of the proposed settlement.

9    3.   The Court grants incentive awards of $5,000 each to Plaintiffs Lopez and Pompa.

10   4.   The Court grants Plaintiffs' counsel $849,983.57 in attorneys' fees.

11   5.   The Court grants Plaintiffs' counsel $50,016.46 in litigation expenses.

12   6.   The Court grants $100,000 in settlement administration costs to be paid from the
         settlement fund.

13   7.   The Court grants $15,000 to be paid to the California Labor & Workforce
         Development Agency from the settlement funds as penalties.

14

15   8.   Class members who asked to opt out of the settlement are excluded from the class.

16   9.   The Court retains continuing jurisdiction over this settlement solely for the purposes of
         enforcing this agreement, addressing settlement administration matters, and addressing
17       such post-judgment matters as may be appropriate under Court rules and applicable
         law.

18

19   10.  Judgment is hereby entered on the terms set forth above.  The clerk shall close the file.

20        IT IS SO ORDERED.

21   Dated:  August 27, 2015

22   

23   _____
                 JON S. TIGAR
         United States District Judge

24

25

26

27

28

_(left margin)_ United States District Court  Northern District of California